PEOPLE ex rel. JUSSEN v. SCANNELL, Fire Com'r.

(Supreme Court, Appellate Division, First Department.   May 11, 1900.)

MUNICIPAL CORPORATIONS—VETERAN ACT—PRIVATE SECRETARY.

    The veteran act, declaring that its provisions prohibiting the removal of a veteran from office, except after a hearing on a charge made, shall not apply to a private secretary of a department, included the secretary of the fire department of New York, where his duties required him to open all letters addressed to the commissioners, to supervise the keeping of the records of the department, to see that the orders of the department were obeyed, to make disbursements for office expenses, to maintain discipline in the office, and to grant leave of absence to employés, and he was in a position to know all proposed proceedings by the fire marshal for the enforcement of the laws relating to arson.

Appeal from special term, New York county.

Application for mandamus by the people, on the relation of Carl Jussen, against John J. Scannell, as fire commissioner of the city of New York. From a final order awarding a peremptory writ, and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Theodore Connoly, for appellant.

H. L. Stimson, for respondent.

VAN BRUNT, P. J. The relator in this case was a veteran, and was removed from his position as secretary of the fire department of the city of New York; and he claims the protection of the veteran act, which prohibits removal, except after a hearing, upon due notice, upon a charge made, and with a right of review. The act provides:

"But the provisions of this act shall not be construed to apply to the position of private secretary or deputy of an official or department or to any other person holding a strictly confidential position." Laws 1896, c. 821.

It is claimed by the defendant that the position held by the relator was strictly confidential, and therefore within the exception named in the last clause. The finding of the jury was that the position occupied by the relator was not a confidential one, and that it did not involve official acts including those that were secret, nor did it cover official acts involving trust and confidence personal to the commissioners. The jury further found that the position occupied by the relator prior to the 1st of January, 1898, was that of a regular clerk. The question necessary to consider is whether there was evidence justifying the jury in coming to this conclusion. It seems to us, upon a consideration of the evidence in this case, that the duties of this relator were of a confidential character, and that his relation to the department and to the commissioners brought him within the exception to the general provisions of the veteran act above mentioned. The description given by the relator of his duties clearly indicates that he had the control of all the correspondence of the department, and that he opened all the letters addressed to the commissioners officially or to the department. It is true that he did not open the private letters of the commissioners, but all others came under his supervision, and he referred the cor-

64 N.Y.S.—38

respondence to the various subordinates, heads of bureaus of the department, under a general direction from the commissioner. He also had charge of the records of the department, and it was his duty to see that they were correctly kept, and to supervise the keeping of them, and to see that all orders of the board were promptly executed and transmitted to the proper subordinates, and various other duties of that kind. It further appeared that he had control of the petty cash for office expenses; that he made these disbursements; and that they were subsequently reimbursed to him by the city. It also appeared that he had the management of the office; that he observed order and discipline, and that he granted leave of absence to the employés when asked, within certain limitations, and that he was the person to whom those desiring temporary leave of absence applied; that he reprimanded those who were guilty of neglect of duty, etc., recommended increase of salaries, and, in general, supervised all the business conducted by the fire department. It also appears that it was the duty of the fire marshal to make investigations in regard to the origin of fires, to take evidence in that regard, to determine the question as to whether prosecutions for arson should be undertaken or not, and that it was also his duty to transmit to the board the testimony taken at such investigation, reduced to writing, with his written report, embodying his conclusion with relation to the matter investigated. He was also required to report to the fire department any facts or circumstances he might ascertain, and to report his proceedings, and the progress made in all prosecutions for arson, etc. All these communications came to the relator, and were opened by him. He thus became possessed of knowledge of all proceedings which the fire marshal proposed to take for the enforcement of the laws and the conviction of the crime of arson. It further appears that, in respect to the communications of the corporation counsel and of the counsel of the department, the relator was the official through which such communications were made. Under these circumstances, it seems to us that the relation of the relator to the department was strictly confidential. It is claimed upon the part of the relator that all the records of the fire department are public property, and that any taxpayer had a right to see them. That may be true, but until these papers and records became public property many of them were confidential in their character, and of these the relator, by virtue of his position, had knowledge; and the commissioners necessarily had to repose trust and confidence in their secretary, and that he would perform the duties which fell within his province in the manner which had been designated by them. The case at bar differs entirely from that of Shields, who was merely a subordinate of the relator. He occupied no such position towards the department as did the relator, and consequently had no such confidential relations, nor was such trust reposed in him. It is further to be observed that after the new charter went into effect, and all the departments were consolidated under one head, it was incumbent upon the commissioner to have a representative, who was in fact his alter ego, in each division of the department, and whose relations to him were necessarily of an extremely close and confidential character. The commissioner had to rely upon such representative to act for him, to represent him in his

`absence, and to attend to the various duties imposed. Under this new régime the relation of this secretary to the department was even of a more confidential character than it had been prior to the consolidation. In respect to such relation after the consolidation, the jury has found that the position occupied by the secretary was a confidential one, as it undoubtedly was; and the restoration of the relator to the position which he occupied would require the commissioner to accept him as secretary, although the position was now strictly confidential. Taking into consideration the whole of the duties which the relator performed, and the relation of those duties to the department, I cannot see that any other conclusion could be arrived at. If there could possibly be any strictly confidential position in a public office, that which the relator occupied was one.

It seems to me that the judgment and order of the court below were erroneous, and should be reversed, and the proceeding dismissed, with costs. All concur.