(85 App. Div. 378.)

PEOPLE ex rel. BERLINGER v. WELLS et al., Commissioners of Taxes and Assessments.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. MANDAMUS—TRIAL BY COURT—FINAL ORDER—APPEAL—WHAT REVIEWABLE.
    Where an alternative writ of mandamus was issued and a return filed thereto, a trial had on the issues framed by the writ and return before the court, and findings were made, the exceptions to such findings presented, on appeal from the final order therein made, not only questions of law, but also the facts, for review.

2. MUNICIPAL CORPORATIONS—DEPARTMENT OF TAXES AND ASSESSMENTS—CHIEF CLERK—CONFIDENTIAL POSITION—REMOVAL.
    Relator was appointed chief clerk in the tax department for the borough of Manhattan, but never passed any examination, because the position was classified, in Schedule A of the Civil Service Rules and Regulations, as a confidential position. The rules of the tax department provide that "all official communication between the borough officials of the department shall be by chief clerk. All other official communications shall be either in the name of the president or the chief clerk of the main office," and that such office "shall be strictly private." Relator's duties required him to assort and distribute the mail; send out, under direction of the board, answers to communications relating to office matters; make out requisitions for supplies, and returns of attendance of employés; receive subpoenas and transmit them to the board; keep charge of from $50 to $200 worth of stamps, and dispense them to different bureaus; and to sometimes take the minutes of the board, where he heard their discussions. It further appeared that the commissioners were in frequent communication with him as to various official matters. Held, that relator's position was confidential, and that he could be peremptorily removed without charges made or reasons given.

Appeal from Special Term.

Mandamus by the people of state of New York, on the relation of Henry Berlinger, against James L. Wells and others, commissioners of taxes and assessments. From an order granting a peremptory writ of mandamus, respondents appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, IN-GRAHAM, and McLAUGHLIN, JJ.

William B. Crowell, for appellants.
Henry S. J. Flynn, for respondent.

O'BRIEN, J.   An alternative writ of mandamus was issued herein and a return filed thereto, and a trial was thereafter had, upon the issues framed by the writ and return, before a justice at the Trial Term, without a jury.   The learned justice made certain findings of fact, to which the defendants duly excepted.   Subsequently the re-lator moved at Special Term for a final order, which was thereafter issued.

The respondent insists that, as no motion was made or order en-tered denying a new trial or to set aside the verdict, and the appeal is only from the final order, we have before us questions of law alone, and that none of the facts in the record are presented for review. Many cases are cited which support this view, but the error into which the respondent has fallen is in treating the findings of fact and con-clusions of law made by the trial judge as the equivalent of a verdict by a jury.   If the order were entered upon a verdict, the practice would be the same as in an action, and in order to present the facts for review it would be necessary to appeal from an order denying a motion for a new trial and denying motion to set aside the verdict. Where, however, as here, the issues were tried by the court without a jury, and findings are made, the exceptions to such findings present not only questions of law, but also the facts, for review in this court.

It appears that the relator was appointed chief clerk in the tax department for the borough of Manhattan in August, 1898, and held that position until discharged in April, 1902; and the question pre-sented is whether he was a "regular clerk," so that he could not be peremptorily removed, or whether he occupied a confidental rela-tion to the commissioners of the department of taxes, which placed it in the power of the commissioners to remove him without charges and without giving any reasons for their action.   The learned trial judge found "that the relator was a regular clerk, and did not oc-cupy a confidential position; that the duties he was required to per-form were not secret; that the relations which existed between him and the respondents [the commissioners] were not those of trust and confidence."   On these findings a motion was made for a per-emptory writ of mandamus to reinstate the relator, which motion was granted at Special Term, and the writ was directed to be issued, and it is from the final order directing the writ that this appeal is taken.

We are obliged to refer briefly to the testimony, for the purpose of determining whether the finding of the learned trial judge is sus-tained in holding that the status of the relator was that of a regu-lar clerk, and not that of one holding a confidential position.   It may be noticed at the outset that the relator never passed any ex-amination, competitive or otherwise, prior to his appointment, be-cause the position of chief clerk which he held was classified in Sched-

ule A of the Civil Service Rules and Regulations. The bearing of this fact as fixing the position of those thus classified was expressed by this court in Shaughnessy v. Fornes, 73 App. Div. 462, 77 N. Y. Supp. 223, affirmed 172 N. Y. 323, 65 N. E. 168, as follows:

"The municipal civil service commission of the city of New York have placed sergeants-at-arms in the noncompetitive list, ranking these positions as confidential, and, while that is not conclusive of the subject, yet it furnishes the interpretation put upon the law by those authorized and required by the law to make the distinctions and classifications of those seeking appointment to office under the municipal government of the city of New York."

As thus stated, while not conclusive, such classification in a non-competitive schedule is entitled to great weight in doubtful cases, because it would seem to be anomalous that one should be appointed without examination or competition to a position, upon the ground that it was a confidential one, and then, when the position had been thus secured, should not be subject to removal because the position was not confidential.

Passing this, however, and referring to the duties which were imposed upon the relator as chief clerk, we think that the position which he occupied was confidential in character. Without mentioning all of them in detail, the more important duties may be briefly summarized. It appears, from the copy of the Rules and Regulations of the Department of Taxes and Assessments which the relator presented, that "all official communication between the borough officials of the department shall be by the chief clerk. All other official communications shall be either in the name of the president or the chief clerk of the main office"; that the employés were to be under the supervision of the deputy in the office, whose duty it was to enforce the rules, and report, through the chief clerk, to the commissioners, monthly, as to the efficiency of the employés; that when any subpœna should be served upon any deputy or clerk or other employé, in any proceeding in which the city is interested, the fact should be communicated to the chief clerk before compliance therewith, in order that, if necessary, the corporation counsel may be informed and advise in the premises; and that "the office of the chief clerk of main office shall be strictly private." The relator, in his statement of the duties of the position, concedes that the chief clerk assorted the mail, and distributed it to the persons to whom it was addressed; sent out, under direction of the board, answers to communications which related to office matters; transcribed the names of shareholders of banks into the books of the receiver, and kept such books; made out requisitions for supplies; received notices of personal taxes, and personally took them to the post office and mailed them; made out returns of attendance of all employés, and kept a record of applications for leave of absence and absences; received subpœnas, and transmitted them to the board. From the relator's testimony it further appears that he had charge of some $50 worth of stamps (another witness says $200), which he gave out to the different bureaus, receiving therefor receipts; that he had made disbursements for the office of small amounts, for which he was eventually

reimbursed upon requisitions which he submitted; that he sometimes took the minutes of the board, and thus heard the discussions and transactions in regard to resolutions that were offered and voted on; that the reason that his office was private was that the minutes of the board were there kept. An assistant secretary of the department testified that he would carry out any instructions given by the chief clerk, and regarded the latter as his superior, and that, when papers were served, the chief clerk would hand him such as were to go before the board, instructing him that they were board matters, and to take them before the board. The president of the tax department testified that the chief clerk opened all mail not addressed to the commissioners personally, and distributed it, or conferred with the president or commissioners in relation thereto, and was to decide to whom or where the letters were to be sent—to what official, and the department; that he had in certain cases directed the chief clerk to sign letters after he had given him the substance, which the chief clerk did, without returning the letter for approbation; that it was the chief clerk's duty to open the reports from the departments which related in general to attendance and discipline of the force; that it was a part of his duties to make up the pay rolls or see that they were properly made up, and that he had the actual supervision of the clerical force in the office, and certain of the force were set apart for him; that the chief clerk was frequently in conference with the commissioners and received their directions, and looked up matters and gave information as to the conduct of the work, and talked over various matters with them, including the efficiency of the different men in the office. Another of the tax commissioners testified that the chief clerk had charge of the opinions given to the board by the corporation counsel. There was also put in evidence a letter from the previous president of the board, who had appointed the relator, which letter had been written to the secretary of the municipal civil service commission, and wherein it was said that the position of chief clerk was one that it was not practicable to fill by examinations, and that his duties were of a supervisory nature—acting for the commissioners, regulating and controlling the disposition of the supplies, attending to all official communications not attended to by the president and the other commissioners, filing, indexing, and taking charge of general records and legal papers, and weekly reports relating to attendance of employés and reports of deputies, and summarizing the same monthly, and, generally, acting in various capacities as directed from time to time by the board.

In view of what thus appears with respect to the nature of the relator's employment, we think that People ex rel. Jussen v. Scannell, 51 App. Div. 360, 64 N. Y. Supp. 593, wherein the question involved was whether or not the duties of the secretary of the fire department were confidential, is quite applicable. In holding that the position was confidential, it was said by the Presiding Justice:

"The description given by the relator of his duties clearly indicates that he had control of all the correspondence of the department, and that he opened all letters addressed to the commissioners officially or to the department. It

is true that he did not open the private letters of the commissioners, but all others came under his supervision, and he referred the correspondence to the various subordinates, heads of bureaus of the department, under a general direction for the commissioner. He also had charge of the records of the department, and it was his duty to see that they were correctly kept and to supervise the keeping of them, and to see that all orders of the board were promptly executed and transmitted to the proper subordinates, and various other duties of that kind. It further appeared that he had control of the petty cash for office expenses, that he made these disbursements, and that they were subsequently reimbursed to him by the city. It also appeared that he had the management of the office, that he preserved order and discipline, and that he granted leave of absence to the employés when asked, within certain limitations, and that he was the person to whom those desiring temporary leave of absence applied; that he reprimanded those who were guilty of neglect of duty, etc., recommended increase of salaries, and in general supervised all the business conducted by the fire department. * * * It further appears that, in respect to the communications of the corporation counsel and of the counsel of the department, the relator was the official through which such communications were made. Under those circumstances, it seems to us that the relation of the relator to the department was strictly confidential. It is claimed upon the part of the relator that all the records of the fire department are public property, and that any taxpayer has a right to see them. That may be true, but until these papers and records became public property many of them were confidential in their character, and of these the relator, by virtue of his position, had knowledge, and the commissioners necessarily had to repose trust and confidence in their secretary, and had a right to expect that he would perform the duties which fell within his province in the manner which had been designated by them."

In addition to the duties thus enumerated, which are almost identical with those which it appears devolved upon the relator, it will be observed that he was occasionally present at the meetings of the board, heard the discussions, and kept the minutes, and that the commissioners frequently were in communication with him, making inquiries and giving directions as to various official matters.

Our conclusion, therefore, is that the relator was not a "regular clerk," but that his position was confidential in its nature, and that he could be peremptorily removed without charges made or reasons given. The order accordingly must be reversed, with $10 costs and disbursements, and the writ dismissed. All concur.