(71 Misc. Rep. 492.)

MERRITT v. KRAFT et al., State Civil. Service Com'n.

(Supreme Court, Special Term, Albany County.   April 25, 1911.)

1. MANDAMUS (§ 75*).—CONTROL OF CIVIL SERVICE COMMISSION.
   Mandamus lies to correct classification of positions in the civil service made by the Civil Service Commission.
   [Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 75.*]

2. MANDAMUS (§ 64*)—CONTROL OF EXECUTIVE OFFICERS.
   Mandamus does not lie to compel the Governor to perform a duty imposed on him by virtue of his office, whether such duty is ministerial or executive, or arises out of his duties as an ex officio member of a board of public officers.
   [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 128, 129; Dec. Dig. § 64.*]

3. MANDAMUS (§ 143*)—CONTROLLING ACTION OF CIVIL SERVICE COMMISSION —TIME TO SUE.
   Mandamus may be brought to correct a classification of positions in the civil service as proposed by a resolution adopted by the state Civil Service Commission before approval thereof by the Governor, though the resolution becomes effective only when approved by the Governor.
   [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 282–285; Dec. Dig. § 143.*]

4. OFFICERS (§ 11*)—CLASSIFICATION—CIVIL SERVICE COMMISSION—STATUTORY POWERS.
   Under Civil Service Law (Consol. Laws 1909, c. 7) §§ 10, 13, empowering the Civil Service Commission to make rules for the classification of offices and employments in the classified service of the state, and specifying classes of positions which shall be in the exempt class, and providing that, in addition thereto, there may be included in the exempt class all other subordinate offices for the filling of which competitive or noncompetitive examinations may be found to be impracticable, enacted pursuant to the Constitution, requiring appointments and promotions in the civil service to be made according to merit and fitness ascertained by competitive examinations as far as practicable, the commission is limited to the classification of positions in the exempt class, in addition to those specifically exempted, to subordinate offices for the filling of which examinations may be found to be impracticable, and where an examination can be had, and where it produces lists of those who have merit and fitness, an examination for such a position is practicable, and the commission may not place it in the exempt class.
   [Ed. Note.—For other cases, see Officers, Cent. Dig. § 13;  Dec. Dig. § 11.*]

5. OFFICERS (§ 11*)—CLASSIFICATION—CIVIL SERVICE COMMISSION—STATUTORY POWERS—"CONFIDENTIAL POSITION."
   The position of stock transfer tax examiner, under Tax Law (Consol. Laws 1909, c. 60) § 270, imposing a stock transfer tax, and prohibiting the sale of stamps denoting the payment of the tax except by agents of the comptroller, is not a confidential position within the civil service law (Consol. Laws 1909, c. 7), empowering the Civil Service Commission to make rules for the classification of offices and employments in the classified service, and the action of the commission in exempting the position from the competitive classes is unauthorized, though the examiner occupies a confidential relation to corporations, transfer agents, and stockbrokers examined to determine whether the law has been complied with.
   [Ed. Note.—For other cases, see Officers, Cent. Dig. § 13;  Dec. Dig. § 11.*
   For other definitions, see Words and Phrases, vol. 2, pp. 1422, 1423.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

6. OFFICERS (§ 11*)—CLASSIFICATION—CIVIL SERVICE COMMISSION—STATUTORY POWERS.

    A classification of positions under the civil service Law (Consol. Laws 1909, c. 7), depending on whether positions are confidential, presents a question of law for the courts, and the matter is not within the discretion of the Civil Service Commission.

    [Ed. Note.—For other cases, see Officers, Cent. Dig. § 13; Dec. Dig. § 11.*]

Application for a peremptory writ of mandamus by Fred L. Merritt aganist John E. Kraft, President, and others, Commissioners, constituting the Civil Service Commission of the State of New York. Granted.

Albert De Roode, for applicant Fred L. Merritt.
Thomas Carmody, Atty. Gen., for defendants.

RUDD, J. Under article 12 of the tax law (Consol. Laws 1909, c. 60), a tax of 2 cents per $100, or fraction thereof, is imposed "on all sales or agreements to sell, or memoranda of sales, or deliveries, or transfers of shares, or certificates of stock, in any domestic or foreign association, company or corporation, made after the first day of June, 1905, whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum, or other evidence of transfer, or sale." The payment of such tax shall be denoted by an adhesive stamp or stamps affixed to the certificate of stock, or to the memorandum of sale, as the case may be. It is the duty of the State Comptroller to inquire into and ascertain whether the tax imposed by the provisions of this article has been paid. The failure to pay the tax is made a misdemeanor, punishable by fine or imprisonment. Stamps used to indicate the payment of the tax must be canceled, and the failure to cancel is a misdemeanor. It is also a misdemeanor to remove the marks of cancellation from any stamp, with intent to use the same again, or to sell or buy any washed or restored stamps. For the collection of this tax there is a bureau in the State Comptroller's office, with a force of about 17 persons. There is a chief clerk, and there are 14 stock transfer tax examiners. The applicant here, Fred L. Merritt, is one of the stock transfer tax examiners. These examiners perform the duties imposed upon the Comptroller of the State under the stock transfer tax law, and investigate as to the commission of crimes under the law. It is necessary for the examiners to visit the offices of corporations, transfer agents, stockbrokers, banks, trust companies, and in such offices to examine books of account and memoranda relating to the sales and transfers of stock. The examiner must inspect all books and papers, even of a confidential nature, belonging to a corporation from which or through which he may determine whether the corporation or the transfer agents or the stockbrokers are complying with the provisions of the law with reference to the payment of the tax on the transfers of stock.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It goes without saying that the duties imposed upon the examiner are of such a character that he must be a man not only of intelligence, but also of integrity and honesty of purpose. The relation which the examiner bears to the corporation, the transfer agents, the bank, the stockbrokers, or the trust company is of such a character that he must not publish to the world or make use for any other purpose than that for which he obtains it of the information or knowledge which comes to him through such examination. In that sense the relation which the examiner bears to the individual or concern whose books and papers he is examining is confidential; that is, it is of such a character that, if he is an honest man, he will do nothing more than use the information for the purposes for which he secured it. That is so with reference to the bank examiners, state or federal. That is so with a great many men in the service of the state and nation. That does not mean that the examiner bears a confidential relation, as contemplated by the statute, to the appointing power, or to the State Comptroller, under whose direction he works. He does not obtain information from the Comptroller which he must not divulge. He does not learn a method of procedure which he must keep to himself. He does not get any information from the Comptroller which leads him to determine that the payment of the tax is being avoided by those on whom the payment falls. His information comes from an entirely different source, just as the information comes to the bank examiner. The responsibility rests upon the bank examiner not to divulge information to any person except to his superior through official communications by him made.

The definition of the word "confidential" in this connection has best been given by the court in Crummey v. Palmer, 152 N. Y. 217, 46 N. E. 328, where the court said:

"Such a relation arises whenever a continuous trust is reposed by one person in the skill or integrity of another. The statute which we have under consideration has reference to officials, and the confidential relations mentioned undoubtedly have reference to official acts, and include not only those that are secret, but those that involve trust and confidence which are personal to the appointing officer. If, therefore, the statute casts upon an officer a duty involving skill or integrity, and a liability either personal or on the part of the municipality which he represents, and he intrusts the discharge of this duty to another, their relations become confidential."

The liability to which the decision evidently refers is pecuniary liability, and to bring the position within the confidential class requires that there should be a pecuniary liability upon the officer, or upon the municipality which he represents. People ex rel. Tate v. Dalton, 158 N. Y. 204, 52 N. E. 1119. The position of examiner of transfers of stock entails no pecuniary liability, either upon the Comptroller, or upon the state.

A recent enactment of the Legislature amending the tax law prohibiting the sale of stamps by private dealers, or by any one excepting the duly authorized agent of the Comptroller, and making such an unauthorized sale a misdemeaner, does not impose upon the Comptroller in the selection of examiners any duty which would require him to have any different or other class of men than he now has for the work which was in hand previous to the enactment of section 271x.

It is contended that the examiner must be a person of matured judgment, and must possess qualities of courtesy and temperate habits, self-control, and integrity beyond those which might be expected of the ordinary employé who performs services under the constant supervision of his employer. No more so than is required of many of the employés of the state, whose duties require them to go outside of the official department and among people and into the offices of corporations whose transactions are under examination. From the time of the inauguration of the stock transfer tax department in the Comptroller's office, the position of examiners of transfers of stock was classified by the State Civil Service Commission as exempt, until July 7, 1910, upon which day the position was classified by the State Civil Service Commission as competitive. This latter classification was approved by the Governor, and appointments have been made in the service from the lists prepared by the State Civil Service Commission under competitive examinations which have been had. The reclassification by the State Civil Service Commission was made upon the application of Clark Williams, then Comptroller, which came presumably as the result of his experience in the execution of the provisions of the law in question through the work of the examiners.

The Attorney General argues that the application for a mandamus is improper, in that it is premature, for the reason that the mere resolution of the State Civil Service Commission is entirely inoperative, and only becomes effective when it meets the approval of the Governor of the state.

[1] It has been determined that mandamus is the proper proceeding to correct the classification of positions in the civil service made by the Civil Service Commisson. People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785. Chief Judge Cullen said:

"The general principle that mandamus will lie against an administrative officer only to compel him to perform a legal duty, and not to direct how he shall perform that duty when the manner of performance is in his discretion, is not a valid objection to the use of that remedy. There is a limit to the exercise of discretion by an administrative officer which may be controlled by the courts."

[2] It has also been held that the courts of the state have no power to issue a mandamus to the Governor to compel his performance of a duty imposed upon him by virtue of his office; and this liability extends to ministerial duties, as well as to those involving executive judgment and discretion, and to actions by the Governor as an ex officio member of a board of public officers. People ex rel. Broderick v. Morton, 156 N. Y. 136, 50 N. E. 791, 41 L. Ed. 231, 66 Am. St. Rep. 547.

[3] It would, therefore, seem that this proceeding was properly brought before the resolution of the State Civil Service Commission had been acted upon by the Governor. The applicant was legally appointed, although he came into the service through appointment, without examination. The position at that time was in the exempt class by reason of the classification by the Civil Service Commission, approved by the Governor. He is still in the service, although at this

time the position which he holds is classified in the competitive class. The change in the classification was made in July, 1910. That he has continued in the service is a fair presumption that he is qualified for the performance of the duties of the position, and he is entitled to invoke the court in his behalf to the end that a determination may be reached as to the legality of the acts of the State Civil Service Commission in changing the classification. The Constitution requires that appointments and promotions in the civil service of the state shall be made according to merit and fitness, to be ascertained so far as practicable by examinations which so far as practicable shall be competitive. Whether the action of the Civil Service Commission in exempting the position of examiners of transfers of stock in the office of the State Comptroller from competition is a proper exercise of the powers of that commission is the question for the court here to decide. The Constitution directs that laws shall be made to provide for the enforcement of the section relating to appointments and promotions in the civil service of the state. A law has been enacted, and is the civil service law (Consol. Laws 1909, c. 7) of the state.

[4] By section 10 of that statute, the Civil Service Commission is given power to make rules for the classification of offices, places, and employments in the classified service of the state, "not inconsistent with the Constitution and the provisions of this chapter." The civil service law specifies in section 13 certain classes of positions which are in the exempt class, and provides in the same section:

"In addition thereto there may be included in the exempt class all other subordinate offices for the filling of which competitive or noncompetitive examinations may be found to be not practicable."

The commission, therefore, is limited to the classification of positions in the exempt class, other than those specifically exempted by the statute, to "those subordinate offices for the filling of which competitive or noncompetitive examinations may be found to be not practicable."

The question of practicability in an examination to determine merit and fitness is a real question, as distinguished from a theoretical idea. If an examination can be had, if it has been had, and if it produces lists of those who have merit and fitness, then certainly it may well be said that an examination for such a position is practicable.

The State Civil Service Commission in its twenty-first report, referring to the question of the practicability of competition, says:

"The only satisfactory proof of the impracticability of competition would seem to be the fact that competition has been tried and has failed to procure a proper person for the position in question, or a similar position. The arbitrary assumption as matter of law that, if competition is tried, it will prove impracticable, is in many instances not a fair or reasonable inference. Neither the commission nor the courts has to do with the policy of requiring competition for positions more or less confidential in their character. The people determined the matter of policy when they incorporated the existing civil service position in their fundamental law. People may differ as to whether or not it is good policy so to restrain the appointing power, but the question is one of practicability and not of policy, and, if the commission can furnish competent and honest persons as the result of competition, it would seem that competition is practicable."

[5] A competitive examination has actually been held for the positions in question here, and there is no evidence before the court showing that such competitive examination has failed to produce the names of persons who have merit and fitness.

It is not contended by the Comptroller that he finds the names of men on the eligible list who are unfit for the work, nor is it claimed that the nature of the examination was such as not properly to test the qualities desired in the examiners.

The report of the chief examiner of the State Civil Service Commission, the Honorable Thomas Carmody, for the year 1895, the year immediately following the adoption of the civil service amendment to the Constitution, is a most admirable statement of the conditions which now prevail, and the rules and the tests which should now govern and control us under the Constitution as distinguished from the conditions previously existing.

Chief Examiner Carmody said:

"The additions made to the competitive schedule during the last two years have included in it nearly every kind of position in the state service. For years it seems to have been conceded that where a person sustained confidential relations toward his superior officer, or where he occupied a fiduciary position, the position could not be filled by competition. Exemptions were nearly always granted where such facts were made to appear to the commission, as the letter of the law seemed to command it. But the new amendment to the Constitution establishes an entirely different standard, and provides that a competitive examination shall be had 'wherever practicable.' This amendment was dictated by the well-established results of competition. The law was passed when the whole idea of civil service examinations was new and experimental in this state, and wisely left almost unlimited discretion to the Governor and commission. The amendment to the Constitution embodies the wisdom of that experience, and makes the question of competition depend, not on the discretion of any one, but on the fact of the practicability of the test. And that it is practicable to fill all of the above-mentioned positions by competition is proven by experience. It has been done and successfully done. During the present year examinations for such positions have been held, and the results have been entirely satisfactory both to the commission and to appointing officers.

"It is often said that the commission has no means of ascertaining the integrity necessary to fill a position of trust and confidence. It is a safe assertion that it has much better means of doing so than obtained under the old system of personal selection, and that it proceeds to apply those means quite as intelligently and cautiously as appointing officers would do, had they the power of personal selection. Every applicant must present certificates of character from at least three citizens of his acquaintance. He must give, under oath, preliminary information regarding his training, experience, former occupations, etc. In addition to this, the commission has the power to make still further inquiry into these matters by investigation, where it has the power to issue subpoenaes, administer an oath, and to dismiss from the eligible list any person found not to possess good character. These safeguards have thus far protected the service from the intrusion of untrustworthy and immoral persons. * * * There are many persons now occupying such positions in the state service, selected from the civil service lists, and I believe there is yet to be recorded a case of breach of trust or duty. The results thus far reached would warrant a still further extension of this schedule. * * *

"When we stop to consider that now there are filled by competition such positions as superintendent of state hospitals and their medical assistants, with their vital and manifold responsibilities, where the duties are of an executive as well as fiduciary nature, and bank examiner, with its almost sacred trust and confidence, can it be said that a mere clerk, who now and then

writes a confidential letter, or has the custody of a few dollars, should be exempt?"

If the statement above quoted is applicable with reference to ascertaining the merit and fitness of a person to be appointed as bank examiner, it must equally apply to the positions here under consideration.

In conclusion, it seems that competition in examination is certainly practicable to fill the position of examiners of transfers of stock. The reasons alleged by the Comptroller for an exemption of the position are as follows:

(1) The duties are such as to require that these examiners shall be able to qualify as experts in all the details of a broker's business and stock transactions, and to investigate and detect evasions of the law.

(2) The examiners must be men of strong character, for whose honesty and fidelity the Comptroller can take and feel entire responsibility. They must be of undoubted truthfulness, since the Comptroller must rely upon their statements to him of existing conditions.

(3) The nature of an examiner's work and the varied interests with which he must deal require in him also qualities of mature judgment, courtesy, temperate habits, self-control, and integrity far beyond those which might be expected of the ordinary employé, and clearly and reasonably entitle the position to be classified as exempt.

Positions calling for just such qualities have been filled by competitive civil service examinations. The state civil service board has so recorded. In its twenty-second report it said:

"The experience of the state officers, including the Civil Service Commission itself, affords abundant evidence that employés thus secured can be as fully relied upon for the performance of the most difficult, responsible, and confidential duties as those obtained by direct and unrestricted selection of the appointing officer."

In its twenty-third report the commission said:

"The year has seen the practicability of testing merit and fitness for public office, under the rule of competition laid down by the state Constitution, many times demonstrated. Positions of large responsibility, requiring tact and other personal qualifications requisite to the most confidential service as well as extended training and high technical knowledge, and carrying compensation in generous amount, have been filled from the eligible lists established by the commission and in a manner entirely acceptable to the appointing officers."

In its twenty-fourth report the commission said:

"That it is practicable to fill positions of trust and responsibility through competition has daily illustration. While appointing officers feel embarrassment at times in the limitations imposed by the law upon personal choice, they recognize that the results are in the main beneficial and that the conditions, should those restrictions be wholly removed, would be anything but healthful to the public service."

Ample evidence of the practicability of competition for filling positions requiring all the virtues claimed for examiners of transfers of stock is found in the fact that in the competitive classification in the state service to-day are bank examiners, insurance examiners, special excise agents, and in New York City are to be found in the competitive classified lists the positions of deputy tax commissioners and examiners of accounts.

[6] The classification in question depends upon a legal construction as to whether the case under examination here is a confidential position. That is a question of law, and it is not within the discretion of the State Civil Service Commission. That is a question for the courts.

The position in question is not in my opinion of a confidential character requiring an exception under the law.

The application for a peremptory writ of mandamus is granted.