[3] The appellant also contends that the City Court was without power to make the clause in the order appealed from restraining the defendant from prosecuting the action for the recovery of the fund in question against the plaintiff. The order appealed from does not assume to restrain the action of any other court, but merely restrains the parties to the present action from taking such proceeding as would render ineffective the order made in this action. The restraint of hostile claimants is an ordinary incident to an action of interpleader, and is necesary to effectuate the purposes of the action. Mercantile Trust Co. v. Calvet-Rogniat, 46 Misc. Rep. 16, 93 N. Y. Supp. 238; Crane v. McDonald, 118 N. Y. 648–650, 23 N. E. 991; 23 Cyc. 29.

While the action of interpleader is in its nature equitable, since the City Court has jurisdiction to entertain it, it follows that the City Court is possessed of these powers which are necessarily incidental to such an action. Every power that is necessary in order to enable the court to completely execute the jurisdiction conferred upon it is possessed by it as a necessary implication from the powers expressly granted. Connor v. Schaeffel, 19 Civ. Proc. R. 378, 11 N. Y. Supp. 737.

We have examined the other objections raised by the appellant, but do not think that they require further discussion.

Order affirmed, with $10 costs and disbursements. All concur.

---

## In re SIMONS.

(Supreme Court, Appellate Division, Second Department. June 23, 1911.)

1. MANDAMUS (§ 75*)—DETERMINATION OF STATE AND MUNICIPAL CIVIL SERVICE COMMISSIONS—REVIEW.

　Mandamus lies to review the determination of the state civil service commission and New York City civil service commission in classifying a position in the exempt or competitive class.

　[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 75.*]

2. OFFICERS (§ 11*)—CIVIL SERVICE—CONFIDENTIAL POSITIONS—EXEMPT CLASS.

　Confidential positions, within Civil Service Law (Consol. Laws 1909, c. 7) § 13, subd. 4, providing that, in addition to specified offices, there may be included in the exempt class all other subordinate offices for the filling of which competitive or noncompetitive examinations are not practicable, confidential positions are as a matter of law exempt from examinations in view of the Constitution, requiring merit and fitness to be ascertained by competitive examination only so far as practicable.

　[Ed. Note.—For other cases, see Officers, Cent. Dig. § 13; Dec. Dig. § 11.*]

3. OFFICERS (§ 11*)—CIVIL SERVICE—CONFIDENTIAL POSITIONS—EXEMPT CLASS—STATUTES—CONCLUSIVENESS ON COURTS.

　A legislative declaration as to the character of an office created by the Legislature is not conclusive on the court in determining whether the classification in the exempt class violates the Constitution, requiring merit and fitness to be ascertained by competitive examination so far as practicable, but it must be regarded with respect and given effect, unless

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

clearly doing violence to the character of the position when considered in relation to the duties attaching thereto.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 13; Dec. Dig. § 11.*]

4. OFFICERS (§ 11*)—CIVIL SERVICE—CLASSIFICATION—LEGISLATIVE DISCRETION.

Under Const. art. 5, § 9, providing for competitive examinations only so far as practicable, and requiring the enactment of laws to provide for examinations to ascertain merit and fitness, the Legislature may within constitutional restrictions classify positions without delegating the authority to the civil service commissions, and there rests in the Legislature considerable discretion in determining whether it is practicable to test the fitness of an applicant for a position created by it.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 13; Dec. Dig. § 11.*]

5. OFFICERS (§ 11*)—CIVIL SERVICE—CLASSIFICATION—LEGISLATIVE DISCRETION.

The court must assume that the Legislature, expressly declaring that officers shall be deemed confidential officers, placed the positions in the exempt class in view of judicial decisions that it is not practicable to determine by examination the fitness of persons for confidential positions.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 13; Dec. Dig. § 11.*]

6. OFFICERS (§ 11*)—CIVIL SERVICE—CLASSIFICATION.

The classification of a given position under Civil Service Law (Consol. Laws 1909, c. 7) § 13, subd. 4, involves the exercise of judgment and discretion, though it is more of a legislative or executive character than judicial.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 13; Dec. Dig. § 11.*]

7. CONSTITUTIONAL LAW (§ 70*)—LEGISLATIVE DISCRETION—JUDICIAL CONTROL.

The exercise by the Legislature of discretion conferred on it by the Constitution will not be disturbed by the courts unless the discretion has been so abused as to show beyond all reasonable controversy a deliberate violation of the intent of the Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–137; Dec. Dig. § 70.*]

8. OFFICERS (§ 11*)—CIVIL SERVICE—CLASSIFICATION.

The Legislature in enacting Laws 1910, c. 659, § 96 et seq., providing for the appointment of probation officers, with duties conferred on such officers by Code Cr. Proc. § 11a, as amended by Laws 1910, c. 610, requiring probation officers to inquire into the circumstances of persons accused of crime, to aid persons placed on probation by friendly advice and admonition, acted within its discretion when classifying the positions in the exempt class within Civil Service Law (Consol. Laws 1909, c. 7) § 13, subd. 4, by declaring that the positions are confidential.

[Ed. Note.—For other cases, see Officers, Dec. Dig. § 11.*]

Appeal from Special Term, Kings County.

Application of Jacob Simons for a peremptory writ of mandamus against John C. McGuire and others, comprising the municipal civil service commission of the city of New York, and William J. Gaynor, as mayor, and John E. Kraft and others, comprising the state civil service commission. From an order granting a peremptory writ, defendants appeal. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before HIRSCHBERG, BURR, THOMAS, CARR, and WOODWARD, JJ.

James D. Bell, for appellants.

A. I. Nova (Mitchell May, on the brief), for respondent.

WOODWARD, J. The question presented on this appeal is whether the position of probation officer of the Court of Special Sessions of the city of New York, created by chapter 659 of the Laws of 1910, is of such a character as to necessitate its classification in the exempt class of the municipal civil service, instead of in the competitive class, in which it has been placed by the municipal civil service commission of the greater city of New York, with the approval of the mayor and of the state civil service commission.

The relator, Jacob Simons, who was appointed as one of such probation officers by the justices of said court, in January, 1911, without having passed a competitive examination, was unable to obtain his salary for the month of February, 1911, by reason of the refusal of the municipal civil service commission to certify his pay roll, such refusal being based upon the fact that the commission had placed the position in the competitive class. He thereupon moved for a peremptory writ of mandamus to compel the certification of the pay roll, and also the reclassification of his position in the exempt class, and, after a contested hearing in the court below, an order was made granting the relief sought, from which the municipal and state civil service commissions and the mayor appealed to this court.

[1] While there has been some confusion in the decisions of the courts of this state as to the circumstances under which the courts will review the determination of the civil service commissions, as to the classification of a given position, and as to the proper remedy applicable thereto, it may now be regarded as settled that in a proper case such revision can be had, and that mandamus is the correct method of securing relief. Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, 37 L. R. A. 809; People ex rel. Chamberlain v. Knox, 45 App. Div. 518, 61 N. Y. Supp. 469; Matter of Blust v. Collier, 62 App. Div. 478, 70 N. Y. Supp. 774; Matter of Peters v. Adam, 56 Misc. Rep. 29, 106 N. Y. Supp. 158, affirmed on opinion of court below 122 App. Div. 898, 107 N. Y. Supp. 1142, and affirmed 190 N. Y. 567, 84 N. E. 1118; People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785; Matter of Dill v. Wheeler, 185 N. Y. 106, 77 N. E. 789; People ex rel. Coit v. Wheeler, 56 Misc. Rep. 289, 106 N. Y. 450.

In the Peters Case, the court, in commenting upon the holding of the Court of Appeals in the Schau Case, to the effect that the courts will not interfere with a given classification where it is fairly debatable, further enunciated what appears to be the correct present rule applicable to such a question in the following words:

"But the court [of Appeals] also recognized the principle that it remained a question of law whether, in a case where the facts were undisputed and only one inference could reasonably be drawn as to the confidential character of the position, a question of law is presented for the determination of the courts."

The relator claims, and has been sustained in the court below, that the position of probation officer by express declaration of the statute creating it, in view of the duties of the office, and under other provisions of law applicable thereto, is a confidential one, and thus falls within the decisions holding that such a position can be properly classified only in the exempt class.

[2] While the civil service law does not use the expression "confidential position" in connection with those that shall be included in the exempt class, it does provide that, in addition to certain specified offices, "there may be included in the exempt class all other subordinate offices, for the filling of which competitive or noncompetitive examinations may be found to be not practicable." Civil Service Law, § 13, subd. 4. Confidential positions are as matter of law exempt from examinations, not by force of express statute, but because the courts in construing the provisions of the Constitution requiring merit and fitness to be ascertained by competitive examination only so far as practicable have held that it is not practicable to determine such merit and fitness as to positions which are essentially confidential in their nature, and as to their duties, as the expression "confidential position" has been or shall be construed judicially when arising as to a given office. Cases above cited.

In the Chittenden Case, one of the first authoritative declarations of the Court of Appeals under the civil service provision of the Constitution of 1894, Judge Haight laid down certain principles which have since proved valuable guides in the administration of this law. Among other things he said:

"In order to determine whether the examination of a candidate for an office is practicable, we must first ascertain the nature and character of the duties of his position. Having ascertained the facts, the question of exemption then, doubtless, becomes one of law."

In disposing of the question now before this court, it therefore becomes necessary to inquire into the duties of the probation officers in question, under express statutory provisions as well as by necessary and reasonable implication as to such further duties as will be cast upon them in the actual conduct and administration of their positions.

Relator's position is one of several additional probation officers, created by section 96 of chapter 659 of the Laws of 1910, which was a comprehensive act relating to the inferior courts of criminal jurisdiction in the city of New York, and defining their powers and jurisdiction and providing for their officers. It is pertinent and important to note that the very section creating these additional probation officers and continuing those already in office provides specifically that "the chief probation officers and all other probation officers shall be deemed the confidential officers of the justices and magistrates," and, further, that the magistrates or justices appointing such chief or other probation officers may remove them at pleasure.

It is thus clear that the Legislature contemplated the exemption of all of these probation officers from competitive examination, as the Legislature must be presumed to have had knowledge of the decisions of the highest court of the state, holding that it is impracticable to determine the fitness of applicants for confidential positions.

[3] While the declaration of the Legislature as to the character of a position is not conclusive upon the court in determining whether the classification of a given position in the exempt class overrides the constitutional requirement, it must be regarded with great respect and be given force and effect, unless clearly doing violence to the character of the position when considered in relation to the duties attaching thereto. By way of analogy, the liquor tax law (chapter 112, Laws 1896), authorizing the State Commissioner of Excise to appoint special agents, provides (section 10) that "such special agents shall be deemed the confidential agents of the state commissioner," and the duties of such special agents are likewise defined by the act. The Court of Appeals held that the positions were confidential, and evidently laid stress on the fact that the statute declared the position confidential, for it said in People ex rel. Sweet v. Lyman, 157 N. Y. 368, 52 N. E. 132:

"Thus we find that the same Legislature which excepted from the operation of the veterans' act any person holding a strictly confidential position declared the position held by the relator to be confidential."

And later on the court used the following language:

"Thus the position to which the relator was appointed was not only declared by statute to be confidential, but its duties were such as to render it clearly so under the doctrine of the cases decided by this court."

And Judge Haight in a dissenting opinion in the same case based on grounds other than those involved as to the confidential nature of the position said on this point:

"Of course, great weight should be given to the determination of the Legislature as to the character of the position."

[4] As the Constitution provides for competitive examinations only as far as practicable, there must necessarily rest in the Legislature considerable discretion in determining whether it is practicable to test the fitness of an applicant for a given position created by it.

It will be observed in this connection that the constitutional provision relating to the civil service and requiring merit and fitness to be ascertained so far as practicable by examinations which, so far as practicable, shall be competitive, is not self-executing, but that the civil service section in which it is found (article 5, § 9) further provides that laws shall be made to provide for the enforcement of this section.

It must therefore follow that the Legislature would have the power, within constitutional restrictions, itself to classify existing positions or new ones which it should create, without delegating the authority so to classify to civil service boards, as it does generally and in cases for which it does not see fit itself to provide.

[5] It must therefore be assumed that in the case of probation officers the Legislature, in expressly declaring that such probation officers be deemed the confidential officers of the justices and magistrates, thereby itself placed these positions in the exempt class, in view of the interpretation of the Constitution theretofore promulgated by the courts to the effect that it was not practicable to determine the fitness of persons for confidential positions.

The question for determination, therefore, left to the court is in one aspect whether in classifying the probation officers created by the statute in question in the exempt class the Legislature so palpably and unreasonably deviated from the constitutional provision requiring merit and fitness to be ascertained as far as practicable by examinations which so far as practicable should be competitive, as to constitute a gross abuse of discretion on its part, clearly so violative of the constitutional provision as to make the classification void as matter of law.

[6] It is well settled that the classification of a given position involves the exercise of judgment and discretion, though it is more of a legislative or executive character than judicial. People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785.

[7] It is also established that, where discretion is lodged in the Legislature by constitutional provision, its exercise will not be overturned by the courts, unless such discretion is so abused as to show beyond all reasonable controversy a gross and deliberate violation of the plain intent of the Constitution and a disregard of its spirit and the purpose for which express limitations are included therein. (Matter of Sherrill v. O'Brien, 188 N. Y. 185, 198, 81 N. E. 124, 117 Am. St. Rep. 841; People ex rel. Carter v. Rice, 135 N. Y. 473, 31 N. E. 921, 16 L. R. A. 836; In re Baird v. Supervisors, 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. 81), and the same principle has been applied and is clearly applicable to classifications in the civil service (People ex rel. Berlinger v. Wells, 85 App. Div. 378, 380, 83 N. Y. Supp. 376). So the courts have recognized and respected a considerable discretion in the Legislature as regards the classification of positions in the civil service, and the difficulty of defining or limiting it where its exercise does not clearly and sharply override the Constitution. Matter of Keymer, 148 N. Y. 219, 226, 42 N. E. 667, 35 L. R. A. 447.

Bringing these principles to play upon the question now before this court, we have a situation in which, in effect, the classification of the positions of probation officers in the exempt class by the Legislature has been attempted to be overruled by their classification in the competitive class by the local civil service commission of the city of New York.

[8] I am satisfied that the classification by the Legislature was reasonably within the discretion lodged with it by the Constitution requiring examinations only so far as practicable, and that the determination of the Legislature that examinations were not practicable in the case of these probation officers cannot be assailed either by local civil service commissions or by the courts.

An examination and consideration of the duties of the probation officers in question confirms the conclusion that it is not practicable to determine satisfactorily the fitness of applicants for these positions by competitive examinations, and that the legislative declarations that these officers shall be deemed confidential does not so clearly contravene, if it at all contravenes, the constitutional provisions relating to the ascertainment of fitness of applicants for these offices, as to require that it be held nugatory and beyond the power of the Legisla-

ture to enact. A brief survey of the duties of these probation officers will show the correctness of this conclusion.

Section 97 of chapter 659 of the Laws of 1910 provides that each of the probation officers shall have all the powers and duties conferred upon probation officers by the Code of Criminal Procedure, and that they shall keep such records and conform to such rules and regulations as may be established by a majority of the justices or magistrates, and that certain of such probation officers shall be assigned to the children's courts, while the duties of others relate to adults. The general powers and duties conferred upon probation officers by the Code of Criminal Procedure are found in section 11a, which was amended by chapter 610 of the Laws of 1910 during the same session of the Legislature at which the law creating additional probation officers was passed. This provision of the Code authorizes the appointment of probation officers from among the officers of a society for the prevention of cruelty to children, or of any charitable or benevolent association, or from among reputable private citizens, male or female. This elastic choice as to appointment of itself tends to negative the idea of limiting appointments to those qualified under competitive examination; for, if appointments were so to be limited, the range of appointment thus given by the Code provision would be useless and meaningless. On the other hand, the propriety of allowing appointments to these positions to be made from officers of societies for the prevention of cruelty to children or of charitable or benevolent institutions is well calculated to secure the most efficient and experienced probation officers and those best fitted for the particular kind of humane work which they are called upon to do under the law. The same Code section authorizes the appointment as probation officers of any officer or member of the police force of any city or incorporated village who may de detailed to duty in such courts, or of any constable or peace officer, but section 96 of chapter 659 of the Laws of 1910 provides that after September 1, 1910, no police officer shall be designated or act as a probation officer.

As regards the duties of probation officers, section 11a, subd. 2, provides that they shall when directed by the court inquire into the antecedents, character, and circumstances of any person or persons accused of crime, and into mitigating or aggravating circumstances attending the same and report thereon in writing to the court; that such probation officers shall furnish the persons placed on probation a statement of the period and conditions of their probation, and instruct them concerning the same, keep informed concerning their conduct and condition, aid and encourage them by friendly advice and admonition, and other suitable measures looking to improvement in their conduct and condition, to report to the court in writing, at least monthly, concerning their conduct and condition, to keep records of their work and accurate and complete accounts collected from probationers, to give receipts therefor, and to make monthly returns thereof, and generally to perform such other duties in connection with such probationers as the court may direct, to make such reports to the state probate commission as it may require. Probation officers may

also require such reports from probationers under their care as are reasonable or necessary, and shall have, as to persons placed on probation under their care, the power of peace officers; and .probation officers may act as parole officers for state penal or reformatory institutions when requested by the authorities thereof, and shall also, upon request of the county judge, act as parole officers in certain cases. So the court may transfer a probationer from the supervision of one probation officer to that of another.

It seems to me reasonably clear that the mere statement of the duties and functions of these probation officers, amongst which such special directions and instructions as must constantly be given by the justices to such probation officers cannot be anticipated or formulated, shows that their relationship to the judicial superiors appointing them is not only of a confidential nature, but that the positions are generally, and for other reasons peculiarly, of a character to make a competitive examination unsuitable and impracticable as a means for determining the fitness of applicants or aspirants for these positions.

Mr. Justice Maddox, in a recent proceeding before him involving the same question now before this court (In re Benchin v. Kempner, 69 Misc. Rep. 410, 127 N. Y. Supp. 614), after enumerating the duties of these probation officers, uses the following language, forcibly and convincingly summing up their duties and the character of their offices:

"From the foregoing it seems to me that the magistrates will be compelled to rely in whole upon the probation officer for information upon which will depend his judicial action and the liberty of every person so placed upon probation. Upon the integrity, discretion, character, and intelligence of such probation officers will depend the nature and sufficiency of the inquiries necessary to be made and information to be obtained; the aid, assistance, and encouragement to be furnished and the advice and admonition to be given to the probationers for their betterment and moral uplift; the verity of their reports to the courts and the magistrates; also their familiarity with the general conditions which may obtain in the atmosphere of a police court and acquaintance with and knowledge of human nature in its various phases. All these considerations in my opinion lead to the conclusion that the positions are necessarily of a confidential relation to the magistrate involving the exercise of integrity and good judgment, and that the appointees should be those in whom the magistrates before being called upon to act judicially should have confidence. The revocation of probation and the imposition of penalty, if made necessary, must depend to a very great degree, almost controlling, upon the officer's performance of his duties and his reports to the magistrate. Indeed, the statute expressly declares that such officers 'shall be deemed the confidential officers of the justices and magistrates.'"

The following language of the Court of Appeals, formulated in the Chittenden Case and approved in the Sweet Case, regarding the nature of confidential positions, seems peculiarly appropriate to the positions of probation officers now before the court:

"A candidate may be ever so competent and still lack many of the necessary elements of a trustworthy officer. He may be ever so learned and still lacking in judgment and discretion. He may be discreet and still without character. He may be honest and yet meddlesome, and a person in whom you could not confide."

Of course, there may be those who may indulge in the presumption that the judicial officers intrusted with the appointment of such pro-

bation officers will act from political or other unworthy motives in making the appointments. As bearing upon such a surmise, we need only again quote from the opinion of the Court of Appeals in People ex. rel. Sweet v. Lyman, supra, as follows:

"But it is said that, if this construction of the Constitution shall obtain, its provisions may be violated by unscrupulous and dishonest officers. That may be. There are few statutes or constitutional provisions that may not be thus violated. But in construing the language of the Constitution distrust of public officers, or fear that they may not discharge their full duties, should not be assumed or entertained and made a basis for holding the statute of 1883 [Laws 1883, c. 354] in conflict with it. In construing this amendment, this court should not assume that public officers will not perform their duty or will fail to discharge the responsibilities imposed upon them by law in an honest and proper manner. 'It must be assumed that the Legislature, and all other public bodies intrusted with the functions of government, general or. local, will use the power conferred by the Constitution or the law fairly and in the public interests.' Clark v. State, 142 N. Y. 101, 105 [36 N. E. 817]."

Mr. Justice Crane in his opinion, in disposing of the present case in the court below in favor of the relator, voiced the same sentiment in the following convincing words:

"Of course, it can be said that, if these positions are not filled from a competitive list after civil service examination, they will be left open for merely political appointment. I cannot believe that in the serious and important work of caring for the welfare and future of the young boys and girls of this community that any one of the magistrates or justices of the Special Sessions will act with any other motive or purpose than to obtain the very best person possible for this delicate work. The earnestness and conscientiousness with which these judges are doing their work refute, such an inference or assertion, and, if any mistake is made, it will be a marked exception."

As to any anticipated fear that improper motives may actuate the conduct of officers making appointments, it may be said that the civil service law itself must be enforced by civil service officials, themselves appointed to office, who may abuse their trust and act arbitrarily or show favoritism in many ways as possibly at times has happened. The argument, if carried to its logical and ultimate conclusion, would indeed make it impossible to secure the honest exercise of the appointing power under any circumstances, and thus disrupt the government itself.

The record before the court on this appeal discloses other circumstances and reasons which, while not controlling upon the judicial action of the court, strongly tend to confirm me in the conclusion that I have reached, that the positions in question cannot properly be placed in the competitive class. It appears that chapter 659 of the Laws of 1910, in which, as already appears, the positions of probation officers were expressly declared to be confidential, was the outcome of a report of a special commission, appointed pursuant to chapter 211 of the Laws of 1908, to investigate generally the courts of inferior criminal jurisdiction of the state of New York and to report thereon and as to reforms and improvements therein. The commission reports, among other things, that the work of the probation officers theretofore appointed, and who counsel for the respondent states in his brief were appointed from eligible civil service lists, was in the

main highly unsatisfactory, and that many of the appointees "evidenced neither the capacity, industry nor disposition, necessary for this important work." The commission also made the following specific recommendations:

"Each chief city magistrate shall have the authority to appoint at pleasure a chief probation officer. Each board of magistrates shall have authority to appoint a sufficient number of probation officers for the needs of this important branch of the work of the Magistrate's Courts. The probation officers hold a place of trust second only to that of the justice or magistrate, and they stand in a peculiarly confidential relation to the court, and should be selected with the greatest possible care."

The commission, as I read their report, also recommended that the probation officers should be appointed without examination, and should be removable at pleasure, "in order that the fullest responsibility shall be imposed upon the justices and magistrates."

It further appears that the civil service commission of the city of New York must have construed chapter 659 of the Laws of 1910 as exempting the positions of probation officers from competitive examination, as shortly after the passage of this act the commission adopted a resolution exempting these positions from competitive examination, which action, however, was disapproved by the mayor of the city of New York in October, 1910.

I have therefore reached the conclusion that the positions of probation officers are of a character and relationship to the judicial officers having the power and responsibility of making the appointments, which makes it impracticable to determine the merit and fitness of appointees by competitive or noncompetitive examination, and that they should therefore be placed in the exempt class, and that the order of the court below, directing such reclassification and requiring that relator's pay be certified, was correct and should be affirmed, with costs to the relator.

Order affirmed with $50 costs and disbursements. All concur.