PEOPLE ex rel. MERRITT v. KRAFT et al., Civil Service Commission.

(Supreme Court, Appellate Division, Third Department. June 28, 1911.)

1. MANDAMUS ( 75*)—CIVIL SERVICE—CLASSIFICATION.

The classification of a position as exempt by the State Civil Service Commission will not be corrected by the court on mandamus unless clearly violative of Const. art. 5, § 9, requiring appointments in the civil service according to merit and fitness ascertained by examinations, and, where there is a reasonable ground for difference of opinion, the action of the commission must stand, though, the court may differ from the commission as to the wisdom of the classification.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 75.*]

2. MANDAMUS (§ 75*)—CIVIL SERVICE—CLASSIFICATION—JUDICIAL REVIEW.

Examiners of stock transfers in the office of the State Comptroller, required to ascertain whether the stamp tax imposed on stock transfers by Tax Law (Consol. Laws 1909, c. 60) §§ 270–279, has been paid, were classified as exempt for five years. At the request of the State Comptroller, the position was classified as competitive. Thereafter, at the request of a subsequent comptroller, the Civil Service Commission placed the position in the exempt class. The examiners under the law are secret service men, and their sole duties are of a detective nature, involving not only thorough knowledge of bookkeeping, but a general commercial experience which will enable them to detect devices by which the tax law may be evaded. *Held*, that the classification of the position in the exempt class was within the discretion of the commission, and the court would not interfere therewith.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 75.*]

Houghton and Kellogg, JJ., dissenting.

Appeal from Special Term, Albany County.

Mandamus by the People, on the relation of Fred L. Merritt, against John E. Kraft and others, constituting the Civil Service Commission of the State, to compel the rescinding of a resolution classified as exempt the position of Examiner of Stock Transfers in the office of the State Comptroller. From an order directing a peremptory writ, defendants appeal. Reversed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thomas Carmody, Atty. Gen., for appellants.
Albert De Roode, for respondent.

SMITH, P. J.  By article 12 of the tax law, it is provided that, upon every sale or transfer of shares of stock in any domestic or foreign corporation, there shall be paid to the state a tax of 2 cents upon each share of $100 of face value or fraction thereof.  This tax is paid by affixing to the instrument of transfer, or, in case there be no instrument of transfer, upon the books of the party making the transfer, adhesive stamps which are purchased from the Comptroller.  For the making of such sale or transfer without the affixing of said stamps the party is deemed guilty of a misdemeanor and is punished by a fine of not less that $500 or more than $1,000, or imprisonment for not more than six months, or both such fine and imprisonment.  By section 276 it is provided that the State Comptroller may inquire into and ascertain whether the tax imposed by the provision of this article has been paid, and for this purpose he is given authority to examine the books and papers of any person, firm or corporation whose memoranda of transfers shall be made accessible to him for that purpose, and a failure to disclose the books and memoranda showing such transfers by any person or corporation is made a misdemeanor, subjecting the party to heavy fine or imprisonment or both.  In 1911 this law was amended so as to prohibit the sale of stamps by private dealers, or by any one except an authorized agent of the Comptroller.

For the purpose of making the examinations necessary to ascertain whether the stamps have been duly affixed and the tax paid, the Comptroller has in his office fourteen employés, called "examiners of stock transfers."  In 1905 when these examiners were first appointed at the request of the State Comptroller, they were classified by the Civil Service Commission as in the exempt class of the civil service. They so continued in the exempt class until July 7, 1910, when, upon the recommendation of the Comptroller, they were put in the competitive class.  In February, 1911, the present Comptroller requested the commission to place the position of examiner of transfers of stock again in the exempt class, and in March of that year the commission passed a resolution restoring such position to the exempt class in the civil service, and it is this resolution which is required to be rescinded by the order for the mandamus issued by the Special Term from which this appeal is taken.

[1] The requirement of the Constitution, in section 9 of article 5 thereof, is to the effect that appointments in the civil service of the state shall be made according to merit and fitness, "to be ascertained as far as practicable by examinations, which so far as practicable shall be competitive."  By this provision of the Constitution it is provided that laws should be enacted to provide for the enforcement thereof. In the enforcement of this fundamental law, to somebody must be assigned the duty of determining in what cases it is practicable to ascertain the qualifications for the office by competitive examination.  That duty is primarily placed upon the executive branch of the government, and by statute has devolved upon the Civil Service Commission.  It

is true that its determination cannot be arbitrarily made, but is subject to review by the courts. There is no doubt, however, as to the rule by which such review should be determined. It is clearly stated in the opinion of Chief Judge Cullen, in People ex rel. Schau v. McWilliams, 185 N. Y. 101, 77 N. E. 787, in this language:

"It seems to me that the cases cited indicate the true extent to which the court should assume to supervise the action of the Civil Service Commission. If the classification of the commission clearly violates the Constitution or the statute, mandamus should issue to correct the classification. If the action of the commission is not *palpably illegal*, the court should not intervene."

In the same case the Chief Judge states:

"Where the position is one, as to the proper mode of filling which there is a fair and reasonable ground for difference of opinion among intelligent and conscientious officials, the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification."

[2] If by the determination of this commission this office had been put in the competitive class of the civil service, the able opinion of the learned judge at Special Term would furnish strong reason for approving such classification. It does not necessarily follow, however, when the commission has determined that the ascertainment of the qualifications for this office by competitive examination is not practicable, that its determination is "palpably erroneous." For five years the position was classified as exempt, with the assumed approval of the different Comptrollers who were in office during that time. The request by Comptroller Williams that the offices be classified as competitive presents only his judgment as differing from those of the prior Comptrollers under whose incumbency the office was deemed properly exempt. These examiners are in fact secret service men. Their sole duties are of a detective nature, involving not only thorough knowledge of bookkeeping, but a general commercial experience, which will enable them to detect the many devices by which this law may be sought to be evaded. Not only extensive business experience, but a keen acumen, is a necessary qualification for the successful performance of duties which are unusually exacting. The competitive examinations provided for by the civil service law are from the nature of the case made public by statute. To whatever conclusion the court would come, if invested with the primary duty of determining this question, in my judgment, in view of the exacting nature of the duties of the office and of the fact that for five years under different Comptrollers the position was deemed properly placed in the exempt class, it cannot be said that "intelligent and honest men might not differ" upon the question, or that the classification of the civil service commission was "palpably erroneous." In People ex rel. Sweet v. Lyman, 157 N. Y. 369, 52 N. E. 132, it was held that a special agent in the excise department was as matter of law to be placed in the exempt class. The principal duties of those agents were detective duties, to ascertain whether the law had been violated, and, while they were given some further responsibilities which apparently have not been given to those examiners, nevertheless the decision throws light upon the question as to whether it can be now held as matter of law that the placing

of these examiners in the exempt class, with duties nearly analogous, is a palpably erroneous classification by the commission. I recommend, therefore, that the order be reversed, and motion denied, but without costs.

Order reversed, without costs, and motion denied, without costs. All concur, except HOUGHTON, J., dissenting in opinion in which KELLOGG, J., concurs.

HOUGHTON, J. (dissenting). I do not think Chief Judge Cullen, in his opinion in People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785, intended to lay down the inflexible rule that the courts could not interfere in any classification by the Civil Service Commission unless its act was palpably illegal as that term is ordinarily understood. All that was decided in that case was that the court had made a mistake in People ex rel. Sims v. Collier, 175 N. Y. 196, 67 N. E. 309, in holding that certiorari was the proper remedy for review of classification. The language employed in the opinion was by way of justification for permitting a review through a writ of mandamus.

The Constitution provides that appointments in the civil service of the state shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations which, if practicable, shall be competitive. Whether fitness can be ascertained by a competitive examination, or whether the position is or is not a confidential one, involves the exercise of judgment and discretion on the part of the commissioners.

It certainly is a part of the duty of courts to ascertain in judicial proceedings whether or not the constitutional law is violated, and it would seem on review of classification by the Civil Service Commission that it is proper for the court to ascertain whether such discretion has been abused, or whether such judgment has been erroneously exercised. Of course, if the strict rules applicable to the writ of mandamus are to be applied the courts by such a writ can correct only absolutely illegal acts, they cannot interfere with an abuse of discretion or an improper exercise of judgment. Unless the right of the court is to be enlarged beyond the ordinary scope of a mandamus, I cannot imagine a practical instance in which a court can review and correct an abuse of discretion or the exercise of even a palpably erroneous judgment on the part of the Civil Service Commission in placing a position in the competitive or noncompetitive class. If the courts have no power over this exercise of discretion and judgment, there is nothing to prevent the Civil Service Commission each time its personnel is changed from determining that all classes of all employés in all departments of the state should be exempt from competitive examination, and thus nullifying not only the statute law, but the Constitution of the state. Every employé of every department of the state has some duty to perform which with one excuse or another can be called confidential or special for the purpose of making it more desirable that the new head of a department shall have the right to choose who shall perform the duty, rather than that he should be compelled to keep in office the one he finds holding the position. If

the discretion exercised by the Civil Service Commission be arbitrary, its arbitrariness does not make it illegal, and, if its judgment be wrongly given, the fact that such judgment is wrong does not necessarily make it illegal. The Civil Service Commission may, therefore, whenever its personnel changes, or at any other time, exercise the most arbitrary discretion and make the most erroneous decisions with respect to classification, and still its acts will not be "palpably illegal."

If its acts can be reviewed by mandamus only when palpably illegal, the practical outcome will be that no act of classification by the commission, however arbitrary or however wrong, can be corrected by the courts, and, if the Civil Service Commission chooses to do so, it can make the civil service law a mere farce.

Assuming, as I do, that the rule is that courts may review the erroneous exercise of discretion and judgment of the commission in classification under a writ of mandamus, I see no justification for the reclassification which the commission has made. An examiner of stock transfers in the Comptroller's office is in no sense a detective or a secret service agent, and cannot be made such. The State Comptroller is authorized to inquire into and ascertain whether the tax imposed by the provision of law has been paid, and, in order to ascertain this fact, he is given power to examine the books and papers of any person, firm, or corporation. He cannot do this personally and is given power to appoint examiners. The examiner must necessarily have some knowledge and some sense; but his powers and his duties are limited to the examination of books and papers for the purpose of ascertaining whether the stamps have been affixed to the transfer of stock. He cannot force books to be produced which are refused, and therefore he need not be necessarily strong of limb. It is no part of the Comptroller's duty or of the examiner's duty to shadow a broker. The law provides a remedy to compel the production of books and provides a means of punishing the crime of not affixing stamps to the transfer of stock, through either the Attorney General's office or the local district attorney's office. The Comptroller is not responsible for the noncollection of any tax, and there is no justification for putting the examiners in the exempt class because of his personal responsibility. Nor is it any justification for the change that for a considerable period these examiners were in the exempt class and were only recently put in the competitive class. If it is wise, as I assume it is, to put the very large proportion of the civil service list of the state in the competitive class for the purpose of insuring stable and efficient service and to prevent change for political reasons, I see not the slightest justification for transferring examiners of stock transfers from the competitive to the exempt class. Such a reclassification is entirely contrary to the spirit of the civil service law, and, if permitted to stand, opens the door to its complete destruction.

I therefore vote for an affirmance of the order of the Special Term.

KELLOGG, J., concurs.