### WEEKS v. KRAFT et al.

(Supreme Court, Appellate Division, Third Department. November 15, 1911.)

1. OFFICERS (§ 11*)—CIVIL SERVICE COMMISSION—CHANGES OF CLASSIFICATION.

A change by the civil service commission of the classification of transfer tax appraisers provided for by Laws 1885, c. 483, and amendments thereto, is not, under the direct provisions of Laws 1909, c. 15 (Consol. Laws, c. 7) § 10, operative until approved by the Governor.

[Ed. Note.—For other cases, see Officers, Dec. Dig. § 11.*]

2. MANDAMUS (§ 75*)—RIGHT TO WRIT—CIVIL SERVICE COMMISSION.

Where the civil service commission changed the classification of transfer tax appraisers, putting them in the exempt class, mandamus will not lie to compel the commission to rescind its action, though asked by an appraiser, until the change has been approved by the Governor, for, until approved, the change is not operative, and at any time prior thereto the commission might alter its determination.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 75.*]

Houghton, J. dissenting.

Appeal from Special Term.

In the matter of the application of W. Holden Weeks against John E. Kraft, as president, and others as members, of the Civil Service Commission. From an order at Special Term (72 Misc. Rep. 134, 129 N. Y. Supp. 690) directing a peremptory writ of mandamus against defendants, they appeal. Order reversed, and writ quashed.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

Thomas Carmody, Atty. Gen., for appellants.
Mayer & Gilbert, for relator W. Holden Weeks.

BETTS, J. [1] By chapter 483 of the Laws of 1885, "An act to tax gifts, legacies and collateral inheritances" in certain cases, was passed by the Legislature and approved by the Governor. Under this statute, the surrogate appointed appraisers whose duty it was to appraise the property of persons whose estate should be subject to the payment of said tax. These appraisers were not within the provisions of the civil service statute or in any classification at that time adopted by the commissioners. Later this statute was so amended that the tax was called the "taxable transfer tax," and in certain counties the appraisers, called the "transfer tax appraisers," were appointed by the State Comptroller. Such appointments commenced in about April, 1900. The state civil service commission classified these transfer tax appraisers in the exempt class. During the time from 1900 to

1909 there were several different incumbents of the civil service commission, and there were also several different Governors and Comptrollers of the state of New York. It did not occur to them to change the classification. In fact, it was shown by the action of both the commissioners, the Governors, and the Comptrollers that the positions were properly considered exempt, and that it was not practicable to secure competent appraisers by placing them in the competitive class. Some time in November, 1909, Clark Williams was appointed Comptroller of the state of New York by the Governor. He was not elected Comptroller. He took his office on or about November 12, 1909. Twenty days thereafter, December 2, 1909, the then civil service commission changed the classification of the position from the exempt class, which classification it had been in from the time of the adoption of any classification by the commission, with the approval of the Governors of the state, placing the same in the competitive class. This change was approved by the then Governor shortly thereafter. It appears from the affidavit of John E. Kraft, the president of the civil service commission, that this change of classification was made merely or principally upon the opinion of the then Comptroller that examinations were practicable to test the merit and fitness of persons in such positions. Some time thereafter an examination was held and an eligible list was prepared, but from it as yet no person has been appointed transfer tax appraiser. Thus it appears an entire change was made in the proposed method of appointment of transfer tax appraisers upon the recommendation of a man who had been 20 days in office. On April 5, 1911, on the petition of the present Comptroller of the state elected, received February 20, 1911, asking to have the commission reconsider the resolution placing in the competitive class the position of transfer tax appraisers, giving reasons therefor, the commission passed a resolution changing the classification back to the exempt class. This resolution has not received the approval or disapproval of the Governor. Such classification is entirely inoperative, and does not take effect until approved by the Governor. See chapter 15, Laws 1909 (Consol. Laws, c. 7) § 10, which says: "Such rules and any modifications thereof, shall take effect when approved by the Governor." Hence, as the law now stands, the position is in the competitive class, and, if the change proposed in the classification by the commissioners is not approved by the Governor, it will remain in the competitive class.

[2] With this situation existing, one W. Holden Weeks, who describes himself as a citizen of the United States and of the state of New York, a resident of the borough of Manhattan, city of New York and a transfer tax appraiser, being appointed in January, 1909, from the exempt class, applied to the Special Term for a writ of mandamus against said state civil service commission commanding them to rescind and revoke their action in passing the resolution classifying the position of transfer tax appraiser in the exempt class of the classified civil service. The Comptroller's petition was submitted about February 20, 1911, and dated that day, the resolution attacked was passed April 5, 1911, after hearing and consideration, and on April 27, 1911, Mr. Weeks verified his petition or affidavit asking for the writ

herein. Return was made thereto by the state civil service commission, and an affidavit was made by the Comptroller giving his reasons why he thought the position should be in the exempt class and by the president of the civil service commission giving his reasons for the action taken and proposed to be taken. The matter came on before the Special Term which granted a peremptory writ of mandamus, and the state civil service commission has appealed therefrom.

I think that the application was prematurely made. No change in classification has been effected, and, until it has been done, the court should not be asked to interfere with one of the commissions of the state, which is proceeding in its own way to carry out the business of the state which has been intrusted to it by the Constitution and the statutes. The action of the commission is a recommendation to the Governor, the executive head of the state, which the Governor may or may not approve. Unless he does approve, no change will be effected. The great state writ of mandamus should not be granted upon the application of a citizen who has no interest, save that of any other citizen of the state, to permit him to attack, and direct this state commission how it should perform its duties, and to reach up to and interfere with the dignified consideration of the Governor of this state of matters pending before him for official action. Mr. Weeks has no direct interest in this proposition. The Comptroller has the absolute power under the statute now of removing him at any time. No attempt has been made to do so.

I think the application is uncalled for at this time, and should not be granted. My attention has not been called to any case where the writ of mandamus has directed the commission how it should frame its resolutions, and what questions it may or may not pass upon, but the aid of said writ has been invoked to change a completed classification when some person thought there were proper reasons for so doing.

It was held in People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785, decided in 1906, that the determination of a municipal civil service commission in classifying positions in the public service, although involving the exercise of judgment and discretion, is more of a legislative or executive character than judicial or quasi judicial, and, therefore, is not reviewable by certiorari. In that case the classification was complete. The court in above case also says:

"It does not at all follow that the action of the civil service commission is not in any case subject to judicial control; but that such control is a limited and qualified one to be exercised by mandamus. If the position is clearly one properly subject to competitive examination, the commissioners may be compelled to so classify it. On the other hand, if the position be by statute or from its nature exempt from examination and the action of the commission be palpably illegal, the commission may be compelled to strike the position from the competitive or examination class, though in such case redress by mandamus would often be unnecessary, as a valid appointment could be made notwithstanding the classification. But *where the position is one, as to the proper mode of filling which there is fair and reasonable ground for difference of opinion among intelligent and conscientious officials, the action of the commission should stand,* even though the courts may differ from the commission as to the wisdom of the classification. The present case is of this character.

We ought not to interfere with the determination of the commissioners that it should be filled by competition; and, *if they had decided that the position should be filled without competition, equally ought we to refrain from interference.* The position lies in that field where the action of the commission should be final. * * * If the classification of the commission clearly violates the Constitution or the statute, mandamus should issue to correct the classification. If the action of the commission is not palpably illegal, the court should not intervene."

As before stated, I think this application is prematurely made. The Governor may not approve. The commission may reverse its action taken. The courts should be, and are, usually called upon to decide real, and not moot, questions. Their aid should not be invoked until some completed action is taken which results in a completed classification. In addition, upon the merits, it would seem as though this case came fully within the rule laid down in People ex rel. Schau v. Mc-Williams, supra, that:

"Where the position is one as to the proper mode of filling which there is fair and reasonable ground for difference of opinion among intelligent and conscientious officials the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification."

Here we have seen that a comparatively long line of Governors, many different civil service commissioners and commissions, and all the Comptrollers from the time that the statute was first enacted in 1885 down to 1909, until the arrival of Comptroller Williams, concluded, that this position was properly classified as in the exempt class. These respective classifications were adopted and continued long after the adoption of the Constitution of 1894 and later after the statutes suggested by the Constitution were passed in order to carry into effect the provisions of that Constitution.

To deny to the civil service commission the power to change its rules and classifications after they have been once made as is sought to be done in this case, after the lapse of a few months has convinced the commission that its action in 1909 was wrong, and that the classification for the many years prior thereto is correct, would be to deny to a body of state officials the right to correct an error that had crept into their proceedings when fuller information and a more careful consideration had convinced them that such action was not for the best interest of the service.

See, also, People ex rel. Merritt v. Kraft et al., decided at the June term of this court, and the opinion of Presiding Judge Smith therein, 130 N. Y. Supp. 363. See In re Simons, 130 N. Y. Supp. 306, where it is held:

"The classification of a given position under civil service law involves the exercise of judgment and discretion, though it is more of a legislative or executive character than judicial."

See Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, 37 L. R. A. 809, where it is held that such a classification made by the mayor of a city, presumably in the conscientious discharge of his duty under the statute, is valid until declared to be erroneous.

The proceeding as to whether a new classification shall be adopted

or not is still pending before the state civil service commission and the Governor. It is neither dignified, courteous, nor proper in my opinion for the courts to interfere until some completed action is taken by them. When that is taken, it may appear that no one has a grievance. If such grievance is later on shown, it will then be proper for the court to act if a proper case is made for that purpose.

I think from what has been shown that the order appealed from should be reversed and the writ quashed, with costs. All concur, KELLOGG, J., in result, except HOUGHTON, J., who dissents.

HOUGHTON, J. (dissenting). I do not think the application for a mandamus was prematurely made.

It is true that the order of the commission transferring the position of transfer tax appraiser from the competitive to the exempt class may not be approved by the Governor. Nevertheless, the civil service commission did all that was in its power to do when it made the order, and, so far as the commission was concerned, it was a final one. If such order was erroneous, mandamus would lie to compel its correction before it was placed in the hands of the Governor for approval or disapproval. Indeed, it is quite proper if there be any question about the order that its validity be determined before the Governor should be called upon to act with respect to it. The Governor had not approved the order in People ex rel. Merritt v. Kraft, 130 N. Y. Supp. 363, and the propriety of the order directing mandamus was passed upon without question as to its being prematurely made.

For the reasons stated by me in my dissenting opinion in People ex rel. Merritt v. Kraft, supra, I think mandamus lies for the correction of erroneous classification by the civil service commission, and I think, also, that the commission in the present case erroneously determined that a transfer tax appraiser could not be properly selected by a competitive examination, and that the transferring of such position from the competitive to the exempt class was wholly unjustified, and that the mandamus was properly issued directing the rescinding of its resolution of reclassification. The duties of a transfer tax appraiser themselves demonstrate, not only that he can be selected by competitive examination, but that he ought to be selected by such examination. He is called upon to determine what is taxable under the transfer tax law. He must have a knowledge of trusts and of wills and devises and bequests, and of the descent and distribution of property of decedents. He must be an expert upon the value of stocks and bonds and personal property in general. He must be capable of ascertaining the value of real property and of conducting examinations and deciding questions of fact as to residence, relationship, and the like. Questions calling for the knowledge of an applicant with respect to these matters can be easily framed, and his answers will readily disclose his qualifications. It would be difficult to imagine a position in which the qualification of applicants could be more readily and properly determined by a competitive examination than that of transfer tax appraiser.

I can see no excuse whatever for transferring such position·from the competitive to the exempt class, except for the purpose of evading the letter and the spirit of the civil service law.

I therefore vote for an affirmance of the order.