In re FARLEY, State Excise Com'r.

(Supreme Court, Special Term, Schenectady County.   October 28, 1911.)

MANDAMUS (§ 75*)—CIVIL SERVICE—CLASSIFICATION OF EXCISE AGENTS—RE-
VIEW.

Const. art. 5, § 9, provides that appointments in the civil service shall
be made according to merit, to be ascertained by competitive examina-
tions; and Liquor Tax Law (Consol. Laws 1909, c. 34) § 7, provides for
the appointment by the state commissioner of excise of special agents,
who shall be deemed the "confidential agents" of the commissioner, and
whose work in investigating violations of law, etc., shall be under his
direction.   Held, on application by the commissioner for mandamus
against the state civil service commission to compel it to place such spe-
cial agents in the exempt class, that in view of the previous history of
administration, and of classification of the position, the decision of the .
commissioners placing such special agents in the competitive class was
conclusive, and the court would not interfere by mandamus.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 75.*]

Application by William W. Farley, as State Commissioner of Ex-
cise, for a peremptory writ of mandamus, addressed to John E. Kraft
and others, as the State Civil Service Commission, directing them to
classify as exempt the position of special agent in the department of
excise.   Denied.

A. M. Sperry and Louis M. King, for applicant.

Thomas Carmody, Atty. Gen. (Franklin Kennedy, on the brief), op-
posed.

J. A. KELLOGG, J.   The state commissioner of excise has applied
for a peremptory writ of mandamus, directing the civil service com-
mission of the state to strike from the competitive class, the position of
special agent in the state department of excise, and requiring said com-
mission to place said position in the exempt class.

Section 7 of the liquor tax law (Laws 1909, c. 39 [Consol. Laws
1909, c. 34]) provides for the appointment by the state commissioner
of excise of not more than 60 "special agents," each of whom shall
execute and file a bond conditioned for the faithful performance of
the duties of his office.   The section further provides:

"Such special agents shall be deemed the *confidential* agents of the state
commissioner, and shall, under the direction of the commissioner, and as re-
quired by him, investigate all matters relating to the collection of liquor
taxes and penalties under this chapter and in relation to the compliance with
law by persons engaged in the traffic in liquors, and perform all duties as
to the search and seizure of liquors set forth in section thirty-three of this
chapter.   Any such special agent may enter any place where liquors are sold
at any time when the same is open, and may examine any liquor tax cer-
tificate granted or purported to have been granted in pursuance of law.   He
may at any time between six o'clock in the morning and six o'clock in the
evening, or any other time when the same are open, enter any uncertificated
premises to search for and seize liquors as provided in section thirty-three
of this chapter.   He may execute warrants issued and directed to him as
provided in said section and perform all acts authorized therein.   He may
investigate any other matters in connection with the sale of liquor and shall
under the direction of the state commissioner make verified complaints of
criminal violations of this chapter investigated by him, and forward the same

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

131 N.Y.S.—23

to the state commissioner for examination, and if approved, to be by him certified and forwarded to the district attorney for prosecution as provided in the case of other officers in section forty hereof. He shall be liable for penalties as provided in section forty-one of this chapter, for neglect by public officers."

With certain slight modifications of phraseology, these provisions of law relative to the appointment of special agents by the state commissioner of excise have been in force since the enactment of the liquor tax law of 1896, being chapter 112 of the Laws of that year, the tenth section of which statute contains provisions substantially similar to those contained in section 7 of the statute now in force.

The state commissioner of excise urges that by reason of the confidential nature of the duties of the position it should be included in the exempt instead of the competitive class of the civil service, and also urges that many of the present holders of the position by reason of age have become unfit, and by reason of long service have become known, generally, throughout the state as special agents of the excise department by persons unlawfully engaged in the traffic in liquor, and that therefore it is impossible through their efforts to obtain evidence of violations of the Liquor Tax Law.

Under date of April 18, 1911, the state commissioner of excise addressed a communication to the state civil service commission requesting a reclassification of the position, placing it in the exempt class. After the hearing upon this application the state civil service commission denied the application by order made June 5, 1911.

It appears that shortly after the creation of the position by the statute of 1896, in the month of April of that year, the state civil service commission in office at that time placed the position in the noncompetitive class. This action was taken by a bare majority of the commission; Commissioner Burt dissenting from the action.

Notwithstanding this action of the state civil service commission, the then State Comptroller, Hon. James A. Roberts, refused to pay the salaries of the agents thus appointed, contending that the provisions of the Constitution required competitive examination, notwithstanding the action of the civil service commission. In this position he was supported by the opinions of many eminent lawyers, including Hon. Joseph H. Choate, Hon. Elihu Root, Hon. Edward M. Shepard, Hon. George F. Danforth, and Hon. Matthew Hale, to the effect that the classification in the noncompetitive class was erroneous, and that competitive examinations were practicable for the position.

Following this discussion, the state civil service commission, at a meeting held May 28, 1896, adopted a resolution which placed the position in the competitive class, which resolution was approved by the Governor on the same day.

A competitive examination was held on June 24, 1896, in which there were 654 candidates, of whom 245 passed. An eligible list was immediately established as a result of this examination, and therefrom vacancies was filled. For more than 15 years this system has been followed, and appointments have been made as a result of competitive examinations. Eleven competitive examinations have been held. During this time 1,654 individuals have taken the examination, 569 of

them have passed such examination, and from the eligible list 104 appointments have been made.

The eligible list now in force was established November 25, 1910, having upon it 122 names, from which 6 appointments have been made. During the administration of three commissioners this system has been followed, and throughout their entire terms they have appointed special agents as a result of eligible lists certified after competitive examination.

The provision of the state Constitution which must be controlling here, irrespective of any legislative or administrative action, is section 9 of article 5, which provides:

"Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to the merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable shall be competitive."

The state commissioner of excise relies, largely, upon the decision of the Court of Appeals in the case of People ex rel. Sweet v. Lyman, 157 N. Y. 368, 52 N. E. 132, and there is much in the opinion of Judge Martin, speaking for the court in that case, which sustains the view of the commissioner, that because this is a confidential position, and is so declared by the Legislature in the act creating it, a competitive examination is not *practicable*, under the language of the Constitution.

An examination of this decision, however, shows that much of the discussion by Judge Martin, and particularly that portion of his opinion relied on by the commissioner, is either obiter dicta or not applicable here.

The actual question decided by the Court of Appeals in that case was that the veterans act of 1896 (chapter 821), which protected veterans from removal, did not apply to the position of special agent in the excise department, because that act in the form in which it then stood stated that it should not be construed to apply to "any person holding a strictly *confidential* position," while the excise law enacted the same year provided that special agents in the excise department should "be deemed the *confidential* agents of the state commissioner."

Another decision, and a late one, cited by the state commissioner, is the decision of the Appellate Division in the Second Department in Re Simons (Sup.) 130 N. Y. Supp. 306, decided June 23, 1911. In that case the court held that the position of probation officer of the Court of Special Sessions of the City of New York is of such a character as to necessitate its classification in the exempt class, and in arriving at this conclusion that court gives much weight to the delaration of the Legislature that in the statute creating the position (Laws 1910, c. 659, § 96) "such officers shall be deemed the *confidential* officers of the Justices and Magistrates."

The language is very similar to that in the liquor tax law in regard to special agents. Following the decision of Sweet v. Lyman, the Appellate Division in the Second Department held that probation officers should be exempt from competitive examination.

In the case at bar, however, we have a very different situation, which

did not exist in regard to the probation officers when In re Simons was decided, and which did not exist in regard to the special agents of the excise department in 1896, when the case of People ex rel. Sweet v. Lyman had its origin, or even in 1898, when it was decided.

We have in this case a long history of administration and a classification of the position as competitive, during which no serious trouble, due to the classification, has arisen, and we have here the benefit of experience of three administrations. It is true that it is contended, and very properly so, by the state commissioner of excise, that these special agents by lapse of years become ineffective by reason of age, also that after any considerable period of service they become so well known in various localities that violators of law are warned of their approach, and thus the efforts of the department in procuring evidence are thwarted. This, however, is one of the conditions arising out of the nature of the position, and would, undoubtedly, exist, whatever mode of selection might have been followed in the original appointment.

The term "confidential" is susceptible of many meanings, depending upon the circumstances surrounding the particular case in which it is used. In the light of the decisions, it is unnecessary to enter upon any elaborate discussion as to how far a position must be "confidential" before a competitive examination for such position ceases to be "practicable," which is the test prescribed by the organic law of the state.

The Court of Appeals in the case of People ex rel. Sims v. Collier, 175 N. Y. 196, 67 N. E. 309, held that the proper remedy to review the decision of the state civil service commission as to a classification was by certiorari, holding that it was a quasi judicial act; but this decision was later overruled in the case of People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785, where it was held that mandamus, and not certiorari, was the proper remedy. The general principle is therefore applicable, that a mandamus will not issue except to enforce a clear legal right. Chief Judge Cullen has laid down the principles which must now be held controlling in this class of cases, as follows:

"If it should appear that there was a plain violation by the commission of its duty to classify as competitive an office which was clearly and manifestly so, there should be a remedy in the courts. But there is necessarily a large debatable field as to cases within which there will be great difference of opinion, even among the most intelligent and fair-minded men, and as to this field it seems to me that it is not reasonable that the judgment of an appellate court should be substituted for that of the commissioners." 185 N. Y. 98, 77 N. E. 786.

"A priori arguments must often yield to actual experience." 185 N. Y. 99, 77 N. E. 787.

"It does not at all follow that the action of the civil service commission is not in any case subject to judicial control, but that such control is a limited and qualified one to be exercised by mandamus. If the position is clearly one properly subject to competitive examination, the commissioners may be compelled to so classify it. On the other hand, if the position be by statute or from its nature exempt from examination, and the action of the commission be palpably illegal, the commission may be compelled to strike the position from the competitive or examination class, though in such case redress by mandamus would often be unnecessary, as a valid appointment could be made notwithstanding the classification." 185 N. Y. 99, 77 N. E. 787.

"But where the position is one as to the proper mode of filling which there is fair and reasonable ground for difference of opinion among intelligent and conscientious officials, the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification. The present case is of this character. We ought not to interfere with the determination of the commissioners that it should be filled by competition; and if they had decided that the position should be filled without competition, equally ought we to refrain from interference. The position lies in that field where the action of the commission should be final." 185 N. Y. 99, 100, 77 N. E. 787.

The language of the Chief Judge is applicable to the case at bar. The classification cannot be said to be "palpably" erroneous. It can, at least, be said, in view of the history of the controversy, that there is a fair and reasonable ground for difference of opinion among intelligent and conscientious officials. We also have here a case of actual experience for 15 years, to which, in the language of the learned judge, "a priori arguments must yield." Furthermore, substantially similar positions in the federal service and in the service of the city of New York have, for many years, been filled by competitive examinations with satisfactory results.

The opinion of the Appellate Division of this Department, handed down June 28, 1911, in the case of People ex rel. Merrill v. Kraft (Sup.) 130 N. Y. Supp. 363, is also in point. In that case the court, although citing as an authority People ex rel. Sweet v. Lyman, follows very closely the reasoning of the opinion in People ex rel. Schau v. McWilliams. The case at bar is clearly one of those cases where the decision of the state civil service commission is conclusive, and the court should not interfere by mandamus to overthrow its decision.

Wherefore the application should be denied.