In the Matter of the Application of ELSIE LURIA and Others, Petitioners, for an Order against HARRY W. MARSH, President, and Others, Members, Together Constituting the Municipal Civil Service Commission of the City of New York, Respondents.

Supreme Court, Special Term, New York County, April 23, 1942.

*Benjamin Menschel,* for the petitioners.

*William C. Chanler, Corporation Counsel* [*Charlotte Orr* of counsel], for the respondents.

SHIENTAG, J.   This is a proceeding under article 78 of the Civil Practice Act by seven petitioners to compel the municipal civil service commission to restore their names to the policewoman eligible list.   The petitioners passed the examination for the position of policewoman and were placed upon the eligible list promulgated by the respondents on February 15, 1939.

The notice of examination for this position provided that " This list will also be certified as appropriate for other positions requiring women of a high degree of physical ability and mental alertness. Persons receiving permanent positions as a result of such certifications will be removed from the eligible list of Policewoman."

Acting in accordance with this notice the commission certified the policewoman list as appropriate for the position of correction officer and the petitioners accepted appointments as correction officers between March 16, 1939, and August 22, 1940.   There is no question that petitioners had notice that their names would be removed from the policewoman list upon appointment as correction officers and five of the seven petitioners were given additional explicit warning of this consequence.

In seeking to be restored to the policewoman list, which is still in existence and has about another year to run, petitioners argue that the civil service commission had no power to remove them from such list upon appointment as correction officers, and that even if such power existed its exercise in this case was arbitrary and unreasonable.

There is no specific provision in the Civil Service Law or in the rules of the civil service commission covering the removal of eligibles from an open competitive list upon their appointment to an appropriate position.

Section 14 of the Civil Service Law reads in part: " Appointments shall be made from the eligible list most nearly appropriate

for the group in which the position to be filled is classified, and a new list shall be created for a stated position or group of positions only where there is no appropriate list existing from which appointment may be made."

This wording clearly envisages permanent appointments from existing lists to appropriate positions. Any interpretation which would require that a person appointed to an appropriate position must remain on the original eligible list would do violence to the intent of this provision. It would mean that whenever an appointee's name was reached upon the original eligible list he might leave the " appropriate " position. This would often result in a complete waste of special training and require retraining for appointees who elected to change their positions. There would be no such thing as permanent appointments.

The intent of the statute seems plain and the removal of a name from the original list with proper notice is a ministerial act requiring no express rule of the commission. Sections 31 and 31-a of the Civil Service Law lend support to this interpretation of the statute. Section 31 provides for the entry of displaced competitive employees upon preferred lists, and their appointment from such lists to similar or appropriate positions. There is no provision in section 31 for the removal of names from the preferred list upon appointment to similar or appropriate positions. Fifteen years after the enactment of section 31, section 31-a was added and provides that " Any person whose name was placed on a preferred list on or after January first, nineteen hundred thirty-two, who has accepted reinstatement to a position lower in rank or grade than the position from which he was suspended shall, notwithstanding such employment, retain his place upon said preferred list."

This indicates the Legislature's belief that a person could be removed from the preferred list upon appointment to a similar or appropriate position both before and after the amendment without any specific authorizing provision. The interpretation problem in this case is parallel to that presented by section 31 before the addition of section 31-a.

Sections 31 and 31-a were treated with in *Matter of Imundo* (N. Y. L. J. Jan. 18, 1940, p. 280, McLaughlin, J.), where the court stated: " No one should be in a permanent position and also be on a preferred list for that position. * * * Apparently Milbert was not reinstated to a position lower in rank or grade than the position from which he was suspended, but rather to one of equivalent rank or grade, although not exactly the same."

*Matter of Suchman* v. *Kern* (170 Misc. 586), cited by the petitioners, is not determinative of this question. The court's

statement that " His service in the position of investigator in the sanitation department did not remove him from the patrolmen's eligible list, although he had been appointed therefrom to another appropriate position," was a statement of an existing fact situation and did not purport to be a ruling on the commission's power to remove from an eligible list upon appointment to an appropriate position. The case of *People ex rel. Webb* v. *Milliken* (66 Misc. 192) involved a question different from the one now being considered. The court ruled in that case that a person who had passed an examination for court stenographer either to the County Court or the Supreme Court was eligible for transfer to the Supreme Court after he was appointed as stenographer to the County Court. The rules of the civil service commission relating to transfers were the basis for that decision.

The petitioners cite *Matter of Aliotta* v. *Finegan* (N. Y. L. J. July 13, 1937, p. 118, HAMMER, J.; affd., 252 App. Div. 855) as authority for the proposition that " the right to remain on an eligible list is absolute and continues until the expiration of the list notwithstanding appointment to an appropriate position." There was no opinion in either court in the *Aliotta* case, but after an examination of the record and briefs in that case I am convinced that it contains no authority for the proposition urged. That case will presently be discussed more fully.

Petitioners argue that the respondents' uniform policy has been to permit eligibles to remain on lists for which they have qualified despite appointment to " appropriate " positions, and that, therefore, the respondents' action in this case is arbitrary and discriminatory. The petitioners are mistaken on the facts. In the recent case of *Matter of Hecht* v. *Kern* (178 Misc. 571), the civil service commission removed the names of the petitioners from the list of clerk, grade 2, upon their appointment as railroad clerks. But even if the uniform practice had been otherwise, the action of the commission in this case would be proper if it was pursuant to law and in the exercise of reasonable discretion. The petitioners have no vested right in an existing rule or practice of the commission. (*Matter of Kornbluth* v. *Reavy*, 261 App. Div. 60, 63.)

This brings us to the question of whether the respondents acted reasonably and whether their action conflicts in any way with the *Aliotta* decision (*supra*). In the *Aliotta* case the petitioners were on the patrolman, police department eligible list, which the commission ruled appropriate for the positions of special patrolman (railroad) and toll collector. Before certifying any eligibles from the patrolman list for such appropriate positions, respondents obtained from each one a waiver in writing of his right to a position

on the patrolman eligible list and his right to certification for the position of patrolman in the event that he accepted a permanent appointment to one of the appropriate positions. The Appellate Division upheld petitioners' right to be restored to the patrolman list despite their express waiver of eligibility and prior appointment to the positions ruled appropriate.

Examination of the *Aliotta* record on appeal reveals that most of the positions deemed appropriate by the commission carried a salary of $1,500 to $2,000 per annum; whereas in five years a patrolman would earn $3,000 per annum. The police department offered excellent promotional opportunities; whereas the two positions deemed appropriate offered comparatively little or no such opportunities. The police department offered favorable pension rights and security of tenure; whereas the two " appropriate " positions offered less favorable pension rights and did not contain comparable safeguards of tenure. Moreover, from the viewpoint of the qualities and abilities required in the performance of duties, the two positions ruled " appropriate " appear inferior to the position of patrolman.

It is this court's opinion, therefore, that the *Aliotta* decision ruled that the civil service commission may not, in making appointments from existing lists to definitely inferior positions which it has declared " appropriate," require as a condition of appointment that the name of the appointee be removed from the original eligible list. It would not matter whether the condition was imposed by means of a waiver or by notice either before or after the examination. The criterion is not the method of notice, as argued by the respondents herein, but the relationship between the duties and rewards of the position for which the eligible has proved his worth and the duties and rewards of the position in return for which he is asked to give up his original eligibility.

This rule is in accord with the provision of section 31-a of the Civil Service Law quoted above, and is in accord with the practice of the civil service commission. In the instant case the commission made appointments from the policewoman eligible list to six positions which it had ruled appropriate. In the case of four of them, including correction officer, it removed the appointees' names from the policewoman eligible list, since it deemed these positions substantially equivalent in duties, requirements and rewards to the policewoman position. In the case of appointments to two positions which it deemed inferior, the commission did not remove the appointees from the policewoman list. This policy was stated in the Municipal Civil Service Commission's Report for 1935 (p. 10): " Similarly competitive lists were certified to lower grades with right to remain on original lists, thus letting highly qualified eligibles

go to work instead of provisional appointees selected without competition. It is also true that filling grade 2 stenographer positions with reporting stenographers or grade 2 accounting positions with grade 5 accountants is presenting a crumb to a gourmet, for such eligibles at no inconsiderable expense and self-study have proved their ability for better positions and better pay."

The rule of the *Aliotta* case, as developed above, is not to be construed as preventing the commission from making temporary appointments from existing lists to inferior positions, where the appointee is not required to give up his place on the original eligible list. Any such construction would seriously hamper the commission in carrying out its duties.

It should be noted that the rule being considered does not turn on a mere weighing of the salaries of the two positions involved or on any other single item, but rather on a comprehensive consideration of the requirements, duties and rewards of the positions. In applying this rule the commission should be given appreciable latitude for the reasonable exercise of its discretion and only where it has acted in an arbitrary or unreasonable manner should the courts intervene. (*People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of Kornbluth* v. *Reavy, supra; Matter of Weeks* v. *Kraft*, 147 App. Div. 403.)

Comparing the position of correction officer with that of policewoman we find that for eligibility both require stringent physical qualifications and comparable education and training. In the matter of salary, policewomen are paid at the rate of $1,200 per annum for the first six months, $2,000 per annum for the next year and a half, and receive annual increments of $250 per annum thereafter until the maximum of $3,000 is reached. Correction officers are paid $1,769 for the first year, $1,889 for the second year, and receive annual increments of $120 per annum thereafter until the maximum of $2,399.99 is reached. While the salary of correction officer is smaller after the first year, the promotional opportunities are clearly superior. Policewomen under the present law are not eligible for any promotion; whereas the petitioners are eligible for the position of supervising correction officer at $2,400 to $3,000, and from that position they can be promoted to deputy superintendent of women prisoners at $3,000 to $3,600, and then to superintendent at $3,600 and over. It is this court's opinion that the proper execution of the duties of correction officer requires at least as high a degree of " physical ability and mental alertness " as does the performance of the duties of policewoman.

Under these circumstances this court cannot say that the respondents acted unreasonably in treating the position of correction officer

as substantially the equivalent of patrolwoman, and in requiring, with proper notice, that the names of those accepting permanent appointment as correction officers should be stricken from the eligible list for policewoman.

The petitioners' course of action in this case has not been marked by good faith. They went through a six months' probationary training period as correction officers, and if they were dissatisfied with the work they could have declined permanent appointment and retained their places on the policewoman eligible list. They accepted permanent appointment, about a year and a half ago in the case of the last appointee and almost three years ago in the case of the first appointee. There is no explanation of why they waited so long to bring this action. In the absence of such explanation, the conclusion is inescapable that they did not want to jeopardize their positions in the department of correction in any way until it appeared that there might be a good chance of appointment in the police department. But while the petitioners were pursuing this course other eligibles refused appointment as correction officers because they did not want to lose their positions on the policewoman list. It would be most unjust to restore petitioners to the policewoman list ahead of those who were so prejudiced by petitioners' failure to bring this action at an earlier date. Here there is an important distinction between the instant case and the *Aliotta* case. The petitioners in that case instituted their action less than a year after the first appointment and could not be charged with the unjustified delay of these petitioners.

The Statute of Limitations in a case of this kind was fixed at four months (Civ. Prac. Act, § 1286) in order to prevent just such prejudice to the rights of others as would result from granting to the petitioners the relief sought. But the Statute of Limitations is not a bar here since it does not begin to run until there has been a demand and refusal to perform a duty enjoined by law. However, a court with broad equitable powers cannot permit a party to sit back and withhold his demand without proper cause and to the serious prejudice of other persons until it suits his own purposes to make the demand. (*Matter of Paul* v. *Foley*, 252 App. Div. 873; appeal dismissed, 277 N. Y. 597; *Matter of DeLack* v. *Greene*, 170 Misc. 309.)

The application is denied and the petition is dismissed. Settle order.